IMESON & LIMERICK *v.* NEWPORT & COVINGTON BRIDGE CO.

NEWPORT & C. BRIDGE CO. *v.* IMESON & LIMERICK.

[Abstract Kentucky Law Reporter, Vol. 5—685, 687.]

**Construction of Contract.**
Even if the terms of a contract are neither rational nor just, still if there is no ambiguity in the contract the court has no right to

conclude that the parties to it did not mean what their language plainly imports.

### Mistakes in Drawing Contract.

Mistakes in drawing instruments may be shown by parol, and the relief granted by a court of equity; but in such cases the evidence of mistake should be clear and convincing.

### Corporate Contracts.

A new contract in lieu of the written contract of a corporation may be proved by parol, but the burden of proof is on the party asserting such new contract. Such party, however, is not required to show a resolution of the board approving the change of contract.

### Contract by Corporation.

A corporation may so contract by an agent, or the acts and conduct of those in authority may evidence such an assent, as to impose on the corporation deriving a benefit therefrom an obligation to pay for it.

### APPEALS FROM CAMPBELL CHANCERY AND CIRCUIT COURTS.

### February 21, 1884.

OPINION BY JUDGE PRYOR:

This action was instituted to recover the reasonable value of appellants' services in the construction of a piece for appellee's bridge over the Licking river between the cities of Covington and Newport. The original petition was based on a written contract between the parties by which the appellants agreed to construct the pier according to certain specifications and places as set forth in exhibit "A", the specifications and drawings made by John Gray.

According to the plan, the pier was to rest on bed rock 88 feet 4 inches from the floor of the bridge and 12 feet below the bed of the river, for which the appellants were to receive $21,478. The contract contained this proviso: "It being further understood and agreed that all excavations below the depth designated in the plan referred to, if any, shall be done at the rate of $2.50 per cubic yard, and all masonry required below the same depth shall be done at the rate of $14.25 per perch of 25 cubic feet." The parties therefore anticipated that the excavation or depth of the pier might exceed twelve feet and contracted in plain terms that if such was the

case they were to receive $2.50 per cubic yard for the excavation and for the masonry $14.25 per perch of 25 cubic feet. We perceive no ambiguity in the contract, or anything upon the face of the writing that would authorize the introduction of parol testimony to vary or contradict its terms in the absence of any allegation of fraud or mistake in its execution. The intention and purpose of the parties can not be mistaken when looking to the subject-matter of the contract and the stipulations embraced by it.

It may appear unreasonable that the appellants should contract to construct this masonry, and make the excavation a distance of thirty-two feet at the prices fixed by the agreement; and while that fact, if established, may conduce to show a mistake in the execution of the agreement or fraud in its procurement, still in the absence of the existence of fraud or mistake the party must be held to its terms. The appellants have contracted to go down until they reach bed rock and must be presumed to have understood the meaning of the language used when contracting with the appellee. A contract may be neither rational nor just, still if there is no ambiguity in the contract the court has no right to say that the parties did not mean to contract in the manner their language plainly imports. The fact that one has made an improvident contract by which loss must reasonably follow will not authorize a reformation of the instrument, but it may be a circumstance conducing to show that the contract was not reduced to writing as the parties intended it should have been, or was improperly obtained by the parties benefited by its provisions.

The appellants filed several amended petitions in which fraud and mistake are alleged in obtaining the contract and in reducing it to writing. Also an amended pleading, alleging in substance that after going the depth of fifteen feet they ascertained that bed rock could not be reached without going a distance of thirty-two feet, and they notified the company that by the agreement which should have been embodied in the writing fifteen feet was the ultimatum or as far as they were required to go, and that the company then agreed that they should go on with their work until they reached bed rock and it would pay what it was worth.

A letter is exhibited which it is alleged was the notice given the company, and whether received or not is immaterial, as we deem it unnecessary to pass upon the testimony. The appellants upon the question of fraud and mistake are met with the objection that the

chancellor alone had jurisdiction to reform the contract if any mistake existed in reducing it to writing. While the common-law judge and the chancellor have concurrent jurisdiction on the question of fraud, as to the reformation of a part of the contract, changing its stipulations in important particulars, a court of equity has the jurisdiction. When the consideration of a contract attempted to be enforced is wholly based on a mistake it may be pleaded at law. *Pope v. Wickliffe,* 7 T. B. Mon. (Ky.) 412. Or where the obligor in a note is sued he may plead that it was executed for too much. *Banton v. Hoomes Exrs.,* 1 A. K. Marsh. 19. The general doctrine is that mistakes in drawing instruments may be shown by parol and the relief granted by a court of equity. The testimony should be clear and convincing, and therefore the danger of submitting such a question to a jury where a partial reformation of the writing must be established in order to recover. The appellants, therefore, on this branch of the case were compelled to go into a court of equity, and there was no error in transferring the case to the chancellor for the purpose of having the issue as to the mistake established; and the whole case having been transferred, the chancellor, having concurrent jurisdiction on the subject of fraud, had the right to dispose of both issues without the intervention of a jury. The testimony on the issues of fraud and mistake is not so convincing as would authorize this court to reverse his judgment on either ground.

The third amended petition offered by appellants is in substance "that when the appellants had reached the depth of fifteen feet below the surface of the water and not finding bed rock they refused to proceed further in the construction of the pier unless the defendant would agree to pay them what the work below that point was reasonably worth, and in a settlement of the differences between them as to what was the contract or as a compromise of the controversy the board of directors, being then in session and having under consideration the protests of the plaintiffs and the compromise of the controversy, then and there agreed that if the plaintiffs would proceed with the execution of the work to its completion they would pay the plaintiffs what said excavation and masonry made below the depth of fifteen feet should be worth, and the same was communicated to the plaintiffs by James M. Boyd, one of the board of directors, and thereupon the plaintiffs did proceed in the execution of the work with the knowledge and approval of the board of directors

that they were so proceeding under said agreement, that the defendant would pay them what the work was reasonably worth."

This contract if established by the testimony was a substitute or in lieu to that extent of the original contract, and the controversy existing between them as to what should have been embraced by the terms of the writen contract was a sufficient consideration for the parol understanding. The burden was on the appellants to establish a change in the agreement, and what evidence they may have in support of this pleading it is unnecesary to determine as no proof was permitted to go to the jury on the issue. It was not incumbent on the appellants to show a resolution of the board approving the change of contract, if any was made. The officers of the company or those authorized to superintend and control the work with the right to change or alter the specifications or plan may do so if they deem it essential to the interest of the company.

If in this case there had been no change in the original plan fixing the bed rock at twelve feet below the surface, and the appellants finding no rock foundation at that point had proceeded with the knowledge of the company and its agents superintending the work to excavate a distance of thirty-two feet, the law would create an implied promise to pay its reasonable value. A corporation may so contract by an agent, or the acts and conduct of those in authority may evidence such an assent or acquiescence in the performance of the work, as to impose on the company deriving the benefit an obligation to pay for it. Angell & Ames on Corporations (11th ed.), § 292. *City of Covington v. Covington & C. Bridge Co.*, 10 Bush (Ky.) 69.

This doctrine of course applies where there is no written contract, and before a written contract can be said to have been abandoned and a new one substituted it must be done by the consent of those of the corporation having the authority to make the change, or, in other words, the authority to execute a contract with third parties. So if this difference as to the construction of the contract or its terms existed, and the board of directors had notice of the purpose of the appellants to discontinue the work, and as a settlement of these differences the board considered the proposition of the appellants and agreed that they would pay them the reasonable value of the work below the fifteen feet, and the appellants proceeded to complete the work under this arrangement, the company

is liable, and it is immaterial whether the resolutions or action of the board are or are not upon its records.

The chancellor when taking jurisdiction of this case might have directed an issue out of chancery in order to determine whether or not such a contract was made, and if made the damages, if any, sustained by its breach, but having transferred the case back to the circuit court, that court had full power to try the legal issues; and as the appellants demanded the right to be heard and have the cause determined upon this branch of the case by a jury the circuit judge should have permitted the amendment and an issue upon it. If the facts alleged in this amended pleading are established the appellants are entitled to a verdict for the reasonable value of their work. The appellants on the trial offered to prove and avowed they could prove by Limerick, Morton, and others that after the depth of fifteen feet had been reached the officers of the company requested the appellants to proceed with their work until a foundation was reached, and they agreed to pay them a reasonable sum for their labor, etc.; that instead of the fifteen feet they went thirty-two feet. Upon such proof the case should have gone to the jury. Greenleaf says: "Where one by an instrument under seal agreed to erect a building for a fixed price, which was not adequate compensation, and, having performed part of the work, refused to proceed, and the obligee thereupon promised that, if he would proceed, he should be paid for his labor and materials, and should not suffer, and he did so, it was held that he might recover in assumpsit on this verbal agreement." I Greenleaf Evidence (14th ed.), § 303. Facts and circumstances may be shown conducing to show that each party abandoned the original contract to this extent, and what facts are sufficient to authorize the issue to be determined by the jury is with the judge trying the case. This court is not called on to determine the quantum of evidence necessary to be introduced by the appellants, but it must be of such a character as to show that the parties abandoned the written agreement after the notice to appellee by appellants of their purpose to stop the work unless they could agree as to what the contract was. The judgment for $1,000 must be reversed, as it is proper for the jury to consider the entire case, and a trial of separate issues involving to some extent the same facts ought not to be allowed. There should be but one ver-

dict, unless a special finding is asked, and then the whole case should be passed on at once.

The judgment is therefore *reversed* on the original and cross-appeal and remanded for proceedings consistent with this opinion. As the appellants were entitled to a hearing on the whole case, the appellee bridge company will be entitled to no costs against appellants. Appellants are entitled to costs on their reversal.

*E. W. Hawkins, Stevenson & O'Hara, R. W. Nelson, for appellants.*

*J. F. & C. H. Fisk, for appellee.*

[Cited, *Illinois Cent. R. Co. v. Manion,* 113 Ky. 7, 23 Ky. L. 2267, 67 S. W. 40.]